UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN CLYNE PERRY, JR. | ) | CASE NO. 1:16CV2970 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| NANCY BERRYHILL[1], | ) | |
| COMMISSIONER OF SOCIAL | ) | MEMORANDUM OPINION & ORDER |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff John Clyne Perry, Jr. ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying his application for Supplemental Security Income ("SSI"). ECF Dkt. #1. In his brief on the merits, filed on March 23, 2017, Plaintiff asserts that the administrative law judge ("ALJ"): (1) lacked substantial evidence to support his residual functional capacity ("RFC") finding that Plaintiff does not require the use of an assistive device; (2) improperly discounted the opinion of treating physician Dr. Kuentz; and (3) lacked substantial evidence to support the hypothetical individual that he presented to the vocational expert ("VE") at the hearing. ECF Dkt. #14 at 12-22. On June 7, 2017, Defendant filed a brief on the merits. ECF Dkt. #17. On June 21, 2017, Plaintiff filed a reply brief. ECF Dkt. #18. For the following reasons, the Court AFFIRMS the ALJ's decision and DISMISSES Plaintiff's complaint in its entirety WITH PREJUDICE.

## I.  FACTUAL AND PROCEDURAL HISTORY

On August 28, 2013, Plaintiff protectively filed an application for SSI alleging disability beginning August 1, 2011 due to diabetes, plantar fasciitis, his feet hurting all of the time due to

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

diabetes, and problems with his vision. ECF Dkt. #12 at 113-119, 143[2]. Plaintiff's application was denied initially and upon reconsideration. *Id.* at 56-77. Following the denial of his application, Plaintiff requested an administrative hearing, and on October 14, 2015, an ALJ conducted the hearing and accepted the testimony of Plaintiff, who was represented by counsel, and a VE. *Id.* at 31. At the hearing, with counsel, Plaintiff amended his alleged onset date to August 28, 2013. *Id.* at 31, 34. On October 27, 2015, the ALJ issued a decision denying Plaintiff's application for SSI. *Id.* at 14-25. Plaintiff requested a review of the hearing decision, and on October 17, 2016, the Appeals Council denied review. *Id.* at 1-6.

On December 12, 2016, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. The parties consented to the jurisdiction of the undersigned on January 9, 2017. ECF Dkt. #10. Plaintiff filed a brief on the merits on March 23, 2017. ECF Dkt. #14. On June 7, 2017, Defendant filed a merits brief. ECF Dkt. #17. Plaintiff filed a reply brief on June 21, 2017. ECF Dkt. #18.

## **II**. **ALJ'S DECISION**

In his decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 28, 2013, his application date. ECF Dkt. #12 at 16.

The ALJ found that Plaintiff had the severe impairments of diabetes mellitus, peripheral neuropathy, and plantar fasciitis. ECF Dkt. #12 at 16. He further found that these impairments, individually or in combination, did not meet or equal any of the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *Id.*

The ALJ thereafter determined that Plaintiff had the RFC to perform less than the full range of sedentary work with the following limitations: frequently and occasionally lifting and carrying up to 10 pounds; sitting up to 6 hours and walking/standing up to 2 hours of an 8-hour workday; frequently pushing/pulling, but never operating foot pedals; occasionally climbing ramps and stairs;

---

[2]All citations to the transcript refer to the page numbers assigned when the transcript was filed in the CM/ECF system rather than the page numbers assigned when the transcript was compiled. This allows the Court and the parties to easily reference the transcript as the page numbers of the .PDF file containing the transcript correspond to the page numbers assigned when the transcript was filed in the CM/ECF system.

never climbing ladders, ropes or scaffolds; occasionally balancing, stooping, kneeling and crouching; no crawling; frequent reaching, handling, fingering and feeling; constant visual capabilities and communication skills; no exposure to high concentrations of wetness or humidity; no exposure to unprotected heights or dangerous machinery; and no complex tasks, but he can perform simple, routine tasks. *Id.* at 17.

The ALJ went on to find, based upon the RFC that he determined for Plaintiff and the VE's testimony, that Plaintiff could not perform any of his past relevant work, but he could perform jobs existing in significant numbers in the national economy, including the jobs of charge account clerk, order clerk of food and beverage, and addresser. ECF Dkt. #12 at 24. He therefore found that Plaintiff was not under a disability as defined in the Social Security Act from August 28, 2013 through the date of his decision. *Id.* at 25.

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## V.    LAW AND ANALYSIS

### A.    RFC AND ASSISTIVE DEVICES

Plaintiff first asserts that the ALJ erred in determining his RFC because the ALJ found that he could walk/stand for up to 2 hours per day even though the "overwhelming medical evidence of

-4-

record" showed that he required a cane and later a rollator walker. ECF Dkt. #14 at 13. Plaintiff contends that it does not matter if his treating physician, Dr. Kuentz, failed to prescribe an assistive device because other evidence established that the assistive devices were necessary. *Id*. at 13-14.

A claimant's RFC is an assessment of the most that a claimant "can still do despite limitations." 20 C.F.R. §§ 416.945(a)(1). An ALJ must consider all of a claimant's impairments and symptoms and the extent to which they are consistent with the objective medical evidence. 20 C.F.R. § 416.945(a)(2)(3). The claimant bears the responsibility of providing the evidence used to make a RFC finding. 20 C.F.R. §§ 416.945(a)(3). However, the RFC determination is one reserved for the ALJ. 20 C.F.R. § 416.946(c); *Poe v. Comm'r of Soc. Sec.*, 342 Fed.Appx. 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician."); SSR 96-5p, 1996 WL 374183, at *5.

Social Security Ruling ("SSR") 96-8p provides guidance on assessing RFC in social security cases. SSR 96-8p. The Ruling states that the RFC assessment must identify the claimant's functional limitations and restrictions and assess his work-related abilities on a function-by-function basis. *Id*. Further, it states that the RFC assessment must be based on *all* of the relevant evidence in the record, including medical history, medical signs and lab findings, the effects of treatment, daily living activity reports, lay evidence, recorded observations, effects of symptoms, evidence from work attempts, the need for a structured living environment, and work evaluations. *Id*.

Social Security Ruling 96-9p, 1996 WL 374185, addresses the use of an assistive device in determining RFC and the vocational implications of such devices:

> Medically required hand-held assistive device:
>
> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96-9p.

The Court finds that the ALJ applied the proper legal standards in the instant case and substantial evidence supports his determination that the medical evidence of record did not establish that a cane or walker was medically required. ECF Dkt. #12 at 22. In his decision, the ALJ acknowledged Plaintiff's use of assistive devices and found the following:

> Regarding the claimant's alleged use of a cane or walker, the claimant testified that Dr. Kuentz prescribed him a cane. However, as recounted above, the claimant bought himself a cane at Walmart and the medical evidence of record contains no prescription for a cane. As for the walker, it appears that the physical therapist ordered the walker based on the claimant's subjective complaints as opposed to the clinical findings on examination. Further, there is no evidence that the physical therapist said there was "no sense in trying physical therapy," and the evidence shows that claimant was simply satisfied with the issuance of a walker. I find this detracts from his credibility and I find no medical necessity for a cane or walker.

ECF Dkt. #12 at 22. The ALJ is correct that the medical record lacks prescriptions or orders from Dr. Kuentz for a cane or walker. Plaintiff appears to concede as much in his brief, asserting that, "it does not matter whether Dr. Kuentz prescribed a cane." ECF Dkt. #14 at 14. Plaintiff reasons that even if Dr. Kuentz did not prescribe an assistive device, the record evidence shows the need for such a device based upon an October 2014 notation by Dr. Fox, Plaintiff's treating physiatrist, that he encouraged Plaintiff to use his cane regularly, and Dr. Fox's suspicion that Plaintiff may need a quad or even a walker. *Id.* Plaintiff suggests that SSR 96-9p is therefore met because "a medical doctor suggested the use of a cane and suspected Plaintiff would even need a more enhanced assistive device." *Id.*

SSR 96-9p requires medical documentation of the need for the assistive device, not just a suggestion by a doctor relating to a claimant's continued use of an assistive device that the claimant purchased on his or her own. *See Parrish v. Berryhill*, No. 1:16CV1880, 2017 WL 2728394 (N.D. Ohio June 8, 2017)("While there are some indications in the medical records that Plaintiff was using a cane, this is insufficient to establish that the cane was medically required. Nor does Plaintiff cite to any medical records describing the circumstances for which a cane is needed as required by SSR 96-9p." (collecting cases). Here, Dr. Fox's note states only that he encouraged Plaintiff to continue to regularly use the cane that Plaintiff bought himself. ECF Dkt. #12 at 422, 431. Plaintiff points to no medical record establishing that the cane was medically necessary or the specific circumstances under which it was needed. Accordingly, the ALJ correctly applied SSR 96-9p in

finding that the cane was not medically necessary and substantial evidence supports that determination.

In addition, Dr. Fox's note indicating his suspicion that Plaintiff may need a quad cane or walker does not constitute the medical documentation required by SSR 96-9p. Dr. Fox did not affirm that the walker was medically required and he did not identify any circumstances under which it was required. Thus, SSR 96-9p is not satisfied by Dr. Fox's notation.

In addition to Dr. Fox's notation, Plaintiff cites to the findings and recommendation of a physical therapist who performed a gait/balance assessment at the request of Dr. Fox. ECF Dkt. #12 at 428, ECF Dkt. #14 at 14-15; ECF Dkt. #18 at 2-3. Plaintiff cites to the therapist's findings that Plaintiff had an antalgic gait, slight weakness in the ankles, limited performance of tasks, and a score right along the cutoff for being at increased risk for falls under the fall protocol. *Id*., citing ECF Dkt. #12 at 432. Plaintiff also points to the therapist's note that he had "improved fluidity" with a rollator walker. ECF Dkt. #14 at 14-15, ECF Dkt. #18 at 1-2, citing ECF Dkt. #12 at 430-431.

The Court notes that Dr. Fox did refer Plaintiff to the physical therapist for a gait/balance assessment and a recommendation on proper gait aids, if any were necessary. ECF Dkt. #12 at 428. The therapist conducted an evaluation and recommended that Plaintiff use a rollator walker because he needed a more supportive assistive device to "unload weight in his lower extremities to allow for greater tolerance to WB[weight-bearing] activities." *Id*. The therapist explained that she recommended a rollator walker in order to allow Plaintiff to be "more independent, efficient, and safe for community mobility." *Id.* at 432.

The therapist ordered the rollator walker for Plaintiff and progress notes in the record indicate that Dr. Fox authorized the order. ECF Dkt. #12 at 436. The physical therapist recommended a "heavy duty" rollator walker due to Plaintiff's weight of 302 pounds. *Id.* at 432. It is questionable whether this authorization by Dr. Fox constitutes the medical documentation necessary in order to meet SSR 96-9p. Nevertheless, SSR 96-9p is still not met as neither Dr. Fox nor the physical therapist indicated that the rollator walker was medically necessary and neither provided information concerning the circumstances under which Plaintiff was required to use it. *See Ross v. Comm'r of Soc. Sec*., No. 2:17CV169, 2018 WL 580157, at \*6 (S.D. Ohio Jan. 29, 2018)

(substantial evidence supported ALJ determination that claimant did not medically require assistive device as records regarding use of cane were inconsistent, she was observed ambulating normally without a cane, and no doctor offered opinion claimant needed a cane and did not describe circumstances in which claimant needed cane), citing SSR 96-9p and *Scroggins v. Comm'r of Soc. Sec.*, No. 16-11913, 2017 WL 4230650, at *3-4 (E.D. Mich. Sept. 25, 2017) (ALJ reasonable in concluding that claimant failed to establish that a cane was medically necessary when no medical source opined that she needed the cane and no medical documentation described circumstances for which she required a cane).

In addition, the ALJ found that the rollator walker was not medically necessary because the physical therapist's recommendation was based upon Plaintiff's subjective complaints and not the clinical examination findings. ECF Dkt. #12 at 22. The ALJ noted that the therapist's assessment showed that Plaintiff's strength testing was within functional limits, with the only area of slight weakness in the ankles, which was secondary to Plaintiff's subjective complaints of pain upon testing. ECF Dkt. #12 at 20, 432. The physical therapist's assessment further showed that rapid alternating movements in the right lower extremity were decreased in speed due to Plaintiff's pain. *Id.* The ALJ also noted that the physical therapist found that Plaintiff was moderately independent in his daily living activities with a cane and although he reported multiple falls, he noted that they were likely in part because he did not use the railings for help. *Id.* The therapist noted that "[p]ain with WB[weight-bearing] is often the reason narrowed BOS[base of support] tasks were areas of weakness with testing." *Id*. at 432.

The ALJ also discounted Plaintiff's credibility when he noted that Plaintiff testified at the hearing that the physical therapist told him that there was "no sense in trying physical therapy," when in fact the therapist noted that Plaintiff was satisfied with using the rollator walker and was discharged from therapy because he felt all that he needed was trainer on the walker at that time. *Id*. at 22, citing ECF Dkt. #12 at 432. The ALJ also cited to activities that Plaintiff performed that contradicted his complaints of extreme pain and limitations, including his ability to attend school through February of 2013, his part-time job delivering mail in March of 2014, and his report that he was playing Wii bowling for 30 minutes per day, lifting weights three days per week, and

mowing the lawn for three hours each week. *Id.* at 19-21. The ALJ further noted that on July 14, 2014, Plaintiff presented to Dr. Fox and indicated that his pain was exacerbated by prolonged standing and walking, but he could ambulate and perform his daily living activities without devices. *Id.* at 20, 369. Dr. Fox noted that Paintiff was not participating in physical therapy, never completed a physical therapy course, and did not do independent exercises at home. *Id.*

The Court finds that the ALJ applied the proper legal standards and substantial evidence supported his decision to find that neither a cane nor a rollator walker were medically necessary. While substantial evidence may exist to the contrary, the decision of the ALJ is supported by his review of the medical evidence which failed to contain documentation of the medical necessity for the cane or walker, and failed to provide a description of the circumstances for which they were needed, such as whether they were needed all of the time, sometimes, in certain situations, for certain distances, or on certain terrains, or any other information. SSR 96-9p.

### B. TREATING PHYSICIAN OPINION

Plaintiff also asserts that the ALJ erred in attributing less than controlling weight and only little weight to the opinion of Dr. Kuentz, his treating physician. ECF Dkt. #14 at 19. Plaintiff further contends that even if the ALJ did not err in his treatment of Dr. Kuentz's opinion, the ALJ's RFC is still not supported by substantial evidence. *Id.*

An ALJ must give controlling weight to the opinion of a treating source[3] if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. Social Security Rule ("SSR") 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his

---

[3] The Court notes that the SSA has changed the treating physician rule effective March 27, 2017. See 20 C.F.R. § 416.920. The SSA will no longer give any specific evidentiary weight to medical opinions, including affording controlling weight to medical opinions. Rather, the SSA will consider the persuasiveness of medical opinions using the factors specified in their rules and will consider the supportability and consistency factors as the most important factors.

-9-

treating physician has deemed him disabled and he may therefore "be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *8 (6th Cir. 2010). The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *7 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

If an ALJ declines to give controlling weight to the opinion of a treating source, he must determine the weight to give that opinion based upon a number of regulatory factors. 20 C.F.R. § 416.927(c)(2). Such factors include "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source."

*Wilson*, 378 F.3d at 544, citing 20 C.F.R. § 416.927(c). An ALJ is not required to discuss every factor in 20 C.F.R. § 416.927(c).

Dr. Kuentz completed a medical source statement dated March 2, 2015 regarding Plaintiff's diabetes. ECF Dkt. #12 at 559-560. He checked that Plaintiff had Type II diabetes and "neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station." *Id*. at 559. He circled the following limitations for Plaintiff: Plaintiff could stand for 15 minutes at a time; he could sit for 30 minutes at a time; he could lift up to 5 pounds on an occasional basis and no amount of weight on a frequent basis; he could never balance; and he needed to frequently elevate his legs during an 8-hour workday. *Id.* Dr. Kuentz did not circle any of the choices for the number of hours that Plaintiff could work per day. *Id.*

Dr. Kuentz also circled the limitation that Plaintiff could sit and stand/walk with normal breaks for less than 2 hours each per 8-hour day. ECF Dkt. #12 at 559. He circled that Plaintiff could maintain concentration, but he could not maintain a regular work pace or perform activity at a sustained pace without an unreasonable number of disruptions. *Id*. at 560. He further circled that Plaintiff could not use his hands at a regular work pace and that Plaintiff would miss more than 2 days per month of work due to his disabilities. *Id.*

The ALJ addressed Dr. Kuentz's medical source statement, concurring that Plaintiff had a limitation on his ability to stand/walk, but giving the rest of the opinion little weight because the evidence as a whole did not support Dr. Kuentz's opinion as to Plaintiff's sitting limitations, his projected absences from work, or his need to elevate his legs. ECF Dkt. #12 at 25. Dr. Kuentz did not provide support for these limitations beyond his checkmarking of Plaintiff's conditions of diabetes and neuropathy. *Id.* at 559. Further, while Plaintiff cites to medical evidence establishing his problems with his feet and with neuropathy, he fails to cite to support for Dr. Kuentz's opinion that he could only sit for less than 2 hours per day, that he would be absent from work more than 2 days per month, or that he needed to elevate his legs. ECF Dkt. #14 at 18-20. The claimant bears the responsibility of providing the evidence used to make a RFC finding. 20 C.F.R. § 416.945(a)(3). Plaintiff has not done so.

-11-

The ALJ also reviewed the medical evidence and other evidence of record earlier in his decision which indirectly contradicted Dr. Kuentz's severe limitations for Plaintiff. He noted Dr. Kuentz's recommendation of conservative treatment for Plaintiff, as well as Dr. Kuentz's 2012 examination findings that Plaintiff had a normal gait, intact sensation and no motor deficits. ECF Dkt. #12 at 18, citing ECF Dkt. #12 at 235-237. The ALJ cited to Plaintiff's August 2013 report to Dr. Kuentz that his symptoms were better after taking Gabapentin three times per day. *Id.* at 19, citing ECF Dkt. #12 at 189, 191, 194. Plaintiff reported to Dr. Kuentz that he walked several miles at Myrtle Beach and he was delivering mail at a university. *Id.* The ALJ noted that in March of 2014, Plaintiff reported that he could no longer deliver the mail due to painful walking and standing, so Vicodin was prescribed, as well as diabetic shoes and physical therapy. *Id.*, citing ECF Dkt. #12 at 317. He referred Plaintiff to pain management and Dr. Fox in July 2014. *Id.* The ALJ cited to Plaintiff's report to Dr. Fox in July of 2014 that he performed his daily living activities without devices, he never participated in a complete course of physical therapy, and he was not performing independent exercises. *Id.* at 20. The ALJ cited to an EMG ordered by Dr. Fox which showed peripheral neuropathy with no evidence of radiculopathy and he cited to Dr. Fox's recommendation that Plaintiff receive injections in his heel, for which Plaintiff reported 100% improvement. *Id.*

The ALJ also reviewed the physical therapist's November 4, 2014 assessment, which revealed functional limitations in strength testing with only slight weakness in the ankle and a score just along the cutoff line for risk of falling. ECF Dkt. #12 at 20, citing ECF Dkt. #12 at 4. However, the ALJ noted that the therapist's assessment was limited based upon Plaintiff's pain tolerances in performing the assessment and she ultimately recommended a rollator walker as it would allow Plaintiff to be the "most independent, efficient, and safe for community mobility." *Id.* at 21, quoting ECF Dkt. #12 at 431-432. The ALJ cited to Dr. Fox's notes of his examination of Plaintiff on April 27, 2015, which documented Plaintiff's complaints of burning pain in his feet, but showed normal muscle tone, strength, reflexes, normal DP and PT pulses of the feet, no trophic changes or ulcerative lesions, and some reduced sensation bilaterally across the plantar surface. ECF Dkt. #12 at 21, citing ECF Dkt. #12 at 526-529. Dr. Fox modified some of Plaintiff's medications, instructed

him in foot care and daily checks, continued his use of hard custom insoles, and told him to follow up in two months. *Id*. at 529.

Finally, the ALJ cited to Dr. Kuentz's July 22, 2015 examination of Plaintiff, in which he found that Plaintiff was "well appearing," and had no edema of the lower extremities. ECF Dkt. #12 at 21, citing ECF Dkt. #12 at 551.

As to the nonmedical evidence, the ALJ found that Plaintiff's reports of his activities also negated affording controlling weight and only little weight to Dr. Kuentz's extreme limitations for him. ECF Dkt. #12 at 22. Earlier in the decision, the ALJ elaborated on those daily activities, which included walking several miles in Myrtle Beach and delivering mail three times per week in 2013, and playing Wii bowling for 30 minutes a day in July of 2014, as well as lifting weights three times per week for 30 minutes and mowing the law for three hours each week. *Id*. at 22.

The Court finds that while the ALJ could have more directly addressed the supportability and consistency of Dr. Kuentz's opinion in the treating physician part of his decision, the ALJ's decision as a whole met the good reasons requirement based upon his review of the medical evidence and nonmedical evidence elsewhere in his decision and substantial evidence supports his determination.

### **C.** **HYPOTHETICAL INDIVIDUAL PRESENTED TO THE VE**

Finally, Plaintiff asserts ALJ error in failing to present an accurate hypothetical individual to the VE. ECF Dkt. #14 at 21-22. In his brief on the merits, however, Plaintiff does not identify how the hypothetical individual presented by the ALJ to the VE was inaccurate. *Id.* To the extent that Plaintiff asserts that the hypothetical individual was inaccurate because no assistive device was included as a limitation, the Court notes that Plaintiff's counsel did not object to this lack of inclusion during the ALJ hearing. Nor did Plaintiff's counsel present a hypothetical individual to the VE who required a medically necessary assistive device. Because Plaintiff "failed to probe this alleged deficiency at the ALJ, [h]e forfeited this argument." *Kepke v. Comm'r of Soc. Sec.*, 636 Fed. App'x 625, 636 (6th Cir. 2016)(claimant waived argument concerning ALJ's failure to include SSR 96-9p specific requirement of frequency to alternate sitting/standing in hypothetical individual presented to VE because she failed to inquire of this deficiency at the ALJ hearing).

Moreover, even if this assertion was not waived, an ALJ is only required to include in his hypothetical individual to the VE the limitations that he finds credible. *Casey v. Sec'y of Health Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993). If the ALJ does not find that an assistive device would be medically necessary, as the ALJ did here, then the ALJ is not required to pose a hypothetical which includes this limitation to the VE. *Id.* Testimony from a vocational expert in responding to a hypothetical question may constitute substantial evidence that a claimant retains the ability to perform specific jobs, so long as the hypothetical accurately accounts for a claimant's physical and mental impairments. *See, e.g., Pasco v. Comm'r of Soc. Sec.*, 137 Fed.Appx. 828, 845 (6th Cir. 2005) (citing *Varley,* 820 F.2d at 779)). The Court finds that the ALJ's RFC for Plaintiff was supported by substantial evidence as set forth by the ALJ in his review of the medical and nonmedical evidence.

## VI. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the ALJ's decision and DISMISSES Plaintiff's complaint in its entirety WITH PREJUDICE.

Date: March 20, 2018  */s/George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE